NEW FURNITURE & UNDERTAKING COMPANY v.
TRI-COUNTY BURIAL CLUB.

4-4686

Opinion delivered October 18, 1937.

*Fred M. Pickens,* for appellant.

*Lamb & Barrett,* for appellee.

GRIFFIN SMITH, C. J. Appellee is a burial society of Newport, Arkansas, operated by the Farmers Union

Undertaking Company of Jonesboro, Arkansas. Its "B" class burial certificate was issued in favor of Orval Harris on an application signed by Will Harris. In the application there is the recitation that the party requesting membership is in good health, not suffering from any chronic disease, nor under the care of any doctor. These statements are made warranties, and there is a provision that if the age or health condition of the applicant is misrepresented, all club benefits shall be forfeited.

Three weeks after the burial certificate was issued, Orval Harris died. Investigations, and the death certificate signed by the attending physician, disclosed that since 1929 Harris had been suffering from a chronic disease which caused his death.

In effect appellant admitted that the application contained warranties as to the member's health, and that death resulted from a disease from which the member was suffering when he applied for burial benefits, but offered to prove by Jesse Outlaw, the deceased's uncle by marriage, that he (Outlaw) was present when the application was executed; that appellee's agent, Albert Duck, knew that Harris was sick, and in spite of this knowledge accepted the application.

The trial court, sitting as a jury, held that the application was void on account of a breach of warranties, and refused to hear testimony as to the agent's knowledge of existing facts.

It is true that a breach of warranty as to any fact material to the risk will avoid a policy of insurance when that defense is interposed, or when the insurer undertakes by proper proceedings in chancery to set the contract aside. The question presented in the instant case is whether the warranty was waived or became inoperative, in view of the alleged knowledge of the agent. Knowledge of the physical condition of the applicant which comes to the agent of the insurance company while he is performing the duties of his agency in receiving applications for insurance and delivering policies becomes the knowledge of the company; and the insurance company is bound thereby, where the agent who solicited the business was charged with the duty of ascertaining

physical condition. *Bankers Reserve Life Insurance Company* v. *Crowley,* 171 Ark. 135, 284 S. W. 4. This rule is firmly established by decisions of this court. If the agent incorrectly or fraudulently transmits the answers of the applicant, that would not defeat the policy if it would have been valid and binding on the answers actually given. This is true whether the answers, under the terms of the policy, are merely representations, or are warranties. But this question is not involved in this case. It follows, therefore, that in those cases where statements are declared to be warranties, and the agent is authorized to determine the materiality of the answers or statements, recovery will not be defeated, if the authority is exceeded, or if the warranties or representations are waived by substitution of the agent's own answers or his interpretation of the applicant's answers, unless the applicant conspires with the agent to materially mislead the insurer.

In *Bankers Reserve Life Insurance Company* v. *Crowley,* referred to *supra,* Chief Justice HART, in referring to another decision of this court, said: "It was also held that if an agent, in collusion with the applicant, even though acting within the apparent scope of his authority, perpetrates a fraud upon the insurance company by making false and fraudulent representations upon which the insurance is obtained, such fraud will vitiate the policy." To the same effect is a holding in *Mutual Aid Union* v. *Blacknall,* 129 Ark. 450, 196 S. W. 792, where it was said: "It is well settled that if the agent, in collusion with the applicant for membership, even though acting within the apparent scope of his authority, perpetrates a fraud upon the society by making false and fraudulent representations upon which the insurance is obtained, such fraud will vitiate the policy."

In a comparatively recent case, *The Maccabees* v. *Gann,* 182 Ark. 1141, 34 S. W. (2d) 456, we said: "Whether the answers were representations or warranties is immaterial in this case because the evidence shows that the agent of the insurance company was advised that she had consulted a doctor about injury and hemorrhage." Also, in *Brotherhood of Railroad Trainmen*

v. *Long,* 186 Ark. 320, 53 S. W. (2d) 433, this sentence appears: "As we understand the rule laid down [in *Providence Life Assurance Society* v. *Reutlinger,* 58 Ark. 528, 25 S. W. 835], it is merely to the effect that, if a false answer is knowingly made by the insured with knowledge of the agent of the company, and the two collude to defraud the company by means of the false answer, the policy of insurance is void."

In *Brotherhood of Railroad Trainmen* v. *Long,* 186 Ark. 320, 53 S. W. (2d) 433, the court quoted with approval *Clemans* v. *Supreme Assembly,* 131 N. Y. 485, 30 N. E. 496, 16 L. R. A. 33, as follows: "If the insurer's agent, after being informed fully as to the facts incorrectly states them in the application, the insurer is estopped to take advantage of the error to avoid liability on the policy. * * * If the statements in the application relied upon as breaches of warranty are inserted by the agent of the insurer, without collusion or fraud upon the part of the insured, the insurer is estopped to set up this error or falsity."

In the case now under consideration, it is not alleged by appellee that there was fraud or collusion between the agent, Albert Duck, and the assured's agent. In the absence of such collusion, appellee would be charged with knowledge of its agent if the agent had authority to investigate the elements of risk specified in the application.

In these circumstances, ·if it should be established that the agent was charged with the duty of investigation, evidence would be admissible to show what information the agent actually had affecting the applicant's insurability, or what statements were made to him.

The cause is reversed and remanded with directions that, on retrial, the testimony offered and excluded be received if a proper foundation is laid.