EUGENE B. HALE, SR. ET AL *v.*
WILLIAM H. HAYS ET UX

5-5738                                           475 S.W. 2d 145

Opinion delivered January 17, 1972

*Hale, Hale, Fincher & Hale,* for appellants.

*James H. Pilkinton,* for appellees.

GEORGE ROSE SMITH, Justice. On February 24, 1969, the appellants, Eugene B. Hale, Sr., and his son, orally agreed to sell to the appellees, William H. Hays and his wife, a city lot in Prescott. On the same day the buyers paid the agreed purchase price of $1,500. During the next seven months the sellers unsuccessfully attempted to have a city water main extended to the lot in question, for without water services the purchasers could not obtain a building permit for the construction of a house on the property.

Finally, on September 25, 1969, the purchasers, having failed to obtain a conveyance of the property, brought this action for breach of contract. They sought $7,000 in damages. The defendants filed a counterclaim for $11,225, on the theory that the plaintiffs had broken their promise to build on the lot a beautiful brick home that would have enhanced the value of the rest of the sellers' property, which they intended to develop as a residential subdivision. The issues were submitted to a jury, which returned a $7,901.25 verdict for the plaintiffs. The appellants assert three principal arguments for reversal, with other subordinate contentions.

First, the sellers insist that the purchasers failed to prove a contract enforceable under the statute of frauds. Ark. Stat. Ann. § 38-101 (Repl. 1962). It is true that in the first instance there was no memorandum sufficient to satisfy the statute. Later on, however, the purchasers decided that they needed an additional 25 feet of frontage. The sellers agreed to that proposal, the price being increased proportionately. In that connection the sellers sent the purchasers a detailed letter which we find

to have been sufficient, with other correspondence, to take the contract out of the statute.

It was admitted by counsel during the oral argument that the letter in question satisfied the statute except with respect to (a) the date on which the buyers were to pay an additional $375 for the extra 25 feet of frontage and (b) the sellers' obligation to obtain water service for the property.

As to objection (a), the sellers' letter closed with this paragraph: "Based on the original price of $1,500.00, and then adding 25 feet by 150 feet, I believe the figures check to be that an additional amount of $375.00 will be due. Please check these figures, and if there are any questions, please let us know." This postscript was then added: "Both deeds will be ready for you at 4 p.m. this Friday."

To support their argument the appellants cite Arkansas cases which state in general terms that the memorandum must show the price to be paid and the time for payment. *Perrin* v. *Price*, 210 Ark. 535, 196 S. W. 2d 766 (1946; *St. L., I. M. & S. Ry.* v. *Beidler*, 45 Ark. 17 (1885). That rule, however, applies to cases in which the parties' oral agreement contemplates some deferment in the payment of all or part of the purchase price. See Restatement, Contracts, § 207, Illustration 3 (1932). We think the following to be a correct statement of the law: "Nevertheless the true doctrine of most of the jurisdictions in question seems to be simply that the time or times of payment must appear from the writing when deferred payments, or at least some substantial delay in payment, was agreed upon." Annotation, 23 A. L. R. 2d 190 (1952).

Our decision in *Kempner* v. *Gans*, 87 Ark. 221, 111 S. W. 1123, 112 S. W. 1087 (1908), is in accord. There the memorandum contained this recital: "Price to be $35,500.00, payable $10,000.00 cash and balance to be arranged to satisfaction of owners." Since the reference to the "owners" meant the sellers, we held the memorandum to be sufficient, because the sellers could have

insisted upon a cash payment of the entire sum. Thus there was no agreement for deferred payments. Similarly, in the case at bar there is no intimation that the parties intended that the $375 payment be deferred. To the contrary, the purchasers paid the original $1,500 in cash; so it may fairly be inferred that the additional $375 was to be paid when the deeds were delivered on the specified Friday.

As to objection (b), the sellers recognized in other correspondence their duty to obtain a water line to the property. On April 28, 1969, one of the sellers wrote to the mayor of Prescott, asking that city utilities be provided for the lot. In sending a copy of that letter to the buyers the writer added this signed postscript: "Please be assured that you will have the utilities needed—and I will file a lawsuit at no cost to you if it becomes necessary." Again, on July 14 the elder Hale wrote to the purchasers, stating among other things that the sellers had worked out an agreement with the city council for a water line, "and we agreed to pay $2,327.00 out of our pocket for same, in order that you would have adequate fire protection, and the water for your home." The water line was never actually completed, but we find no want of compliance with the statute of frauds.

Secondly, the appellants insist that the court erred in allowing the jury to consider, and to include in the verdict, special damages not fairly in contemplation of the parties when the contract was made. *Chicago, R. I. & P. Ry.* v. *King,* 104 Ark. 215, 148 S. W. 1035 (1912). The plaintiffs' proof of damages covered many items, including the original purchase price, the cost of sand and dirt used to level the lot, a penalty paid to a contractor who had agreed to build a house on the lot, increased building costs incurred in the construction of a house elsewhere, rent for living quarters while the plaintiffs were delayed in building a home, and storage charges for, and damage to, household furniture during that delay.

This issue cannot be raised for the first time on appeal. All the questioned items were specifically plead-

ed by the plaintiffs. The defendants allowed the evidence to be introduced without objection. No request was made for an instruction withdrawing any item from the jury's consideration. It would be manifestly unfair to the plaintiffs, to the trial court, and to this court to allow the defendants to obtain a new trial at this late date, after they stood by without objection and permitted the plaintiffs, their attorneys, and the courts to devote time and expense to the trial of the case. Consequently it is our settled rule that where no objection to evidence is made in the trial court, its admission cannot be assigned as error on appeal. *Caddo Transfer & Warehouse Co.* v. *Perry*, 174 Ark. 1030, 298 S. W. 337 (1927); *Scott* v. *McCraw, Perkins & Webber Co.*, 128 Ark. 397, 194 S. W. 230 (1917). In decisions specifically applicable here we have held that a party cannot assert on appeal that the trial court applied an incorrect measure of damages, where no objection was made to the evidence or to the instructions. *St. Louis—S. F. Ry.* v. *Friddle*, 237 Ark. 695, 375 S. W. 2d 373 (1964); *Wolff* v. *Alexander Film Co.*, 186 Ark. 848, 56 S. W. 2d 424 (1933).

Thirdly, the appellants are correct in contending that the amount of the verdict should not be permitted to exceed the sum sued for. *Turner* v. *Smith*, 217 Ark. 441, 231 S. W. 2d 110 (1950). We cannot sustain the appellees' suggestion that the pleadings be regarded as having been amended to conform to proof that was introduced without objection. The defendants could not have successfully objected to any item of damages on the ground that it brought the total above the amount prayed for in the complaint, because the plaintiffs were entitled to introduce all their elements of damage in the hope that some of them would be favorably considered by the jury. Where, as here, the record does not support the amount of the judgment, our practice is to reduce the judgment to the highest allowable figure and to affirm it as so modified. *Brickey* v. *Lacy*, 245 Ark. 860, 435 S. W. 2d 443 (1968). The amount of the judgment will therefore be reduced to $7,000.

Fourthly, as a subordinate contention the appellants argue that the circuit court should have granted a new

trial for newly discovered evidence. It is enough to say that we perceive no probability that the added proof would have changed the result. *Yellow Cab Co. v. Dossett*, 244 Ark. 554, 426 S. W. 2d 792 (1968). The appellants' remaining contentions are not of sufficient merit to warrant discussion.

Modified and affirmed.